**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK and STATE OF CONNECTICUT,<br><br>                   *Plaintiffs*,<br>    v.<br><br>E. SCOTT PRUITT, in his official capacity as Administrator of the United States Environmental Protection Agency, and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>          *Defendants*. | Civil Case No.: 1:18-cv-00406-JGK |

<u>**MEMORANDUM OF LAW**</u>
<u>**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION .............................. 1

I.    ISSUE TO BE DECIDED ......................................................................... 1

II.   STATEMENT OF RELEVANT STATUTORY AND FACTUAL
      BACKGROUND ....................................................................................... 2

      A.  The Clean Air Act and NAAQS ....................................................... 2

      B.  Factual Background .......................................................................... 3

      C.  Procedural History of This Matter ................................................... 8

III.  JURISDICTION ........................................................................................ 9

IV.   LEGAL STANDARD ................................................................................ 10

V.    ARGUMENT ............................................................................................. 12

      A.  EPA FAILED TO PERFORM ITS MANDATORY DUTY TO ISSUE
          FIPS FOR ILLINOIS, MICHIGAN, PENNSYLVANIA, VIRGINIA AND
          WEST VIRGINIA BY THE STATUTORY DEADLINE. ........................ 12

      B.  AN ORDER REQUIRING EPA TO EXPEDITIOUSLY PERFORM ITS
          MANDATORY DUTY TO PROMULGATE FIPS FOR ILLINOIS,
          MICHIGAN, PENNSYLVANIA, VIRGINIA AND WEST VIRGINIA IS
          FEASIBLE AND NECESSARY. ......................................................... 14

          1.  Requiring EPA to meet the agreed upon schedule is urgently necessary
              because any further delay unfairly burdens New York and Connecticut and
              harms public health and welfare. ........................................... 15

          2.  The parties' requested schedule for EPA to propose and finalize FIPs is
              feasible. ............................................................................... 17

VI.   CONCLUSION ......................................................................................... 19

## **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Alabama Power Co. v. Costle*,
   636 F.2d 323 (D.C. Cir. 1979) ..............................................................................12

*Alaska Ctr. for Env't v. Browner*,
   20 F.3d 981 (9th Cir. 1994) ..................................................................................11

*American Int'l Grp., Inc. v. London Am. Int'l Corp.*,
   664 F. 2d 348 (2d Cir. 1981)..................................................................................10

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...............................................................................................11

*Bryant v. Maffucci*,
   923 F. 2d 979 (2d Cir.), cert. denied, 502 U.S. 849 (1991) ..................................11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................... 10-11

*EPA v. EME Homer City Generation, L.P.*,
   134 S.Ct. 1584 (2014)........................................................................................5, 15

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
   22 F.3d 1219 (2d Cir. 1994)...................................................................................10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...............................................................................................10

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)...............................................................................................10

*Natural Res. Def. Council v. Train*,
   510 F.2d 692 (D.C. Cir. 1974) ...................................................................11, 14, 19

*North Carolina v. EPA*,
   531 F.3d 896, amended in other part on reh'g, 550 F.3d 1176 (D.C. Cir. 2008) ...................17

*Northwest Envtl. Def. Ctr. v. Bonneville Power Admin.*,
   477 F.3d 668 (9th Cir. 2007) .................................................................................14

*Sierra Club v. Johnson*,
   2006 WL 889801 (D.D.C. Mar. 31, 2006), reasoning explained 444 F. Supp. 2d.................13

*Sierra Club v. Johnson*,
  444 F. Supp. 2d 46 (D.D.C. 2006) ......................................................... 11-12, 14, 19

*Sierra Club v. Pruitt*,
  280 F. Supp. 3d 1 (D.D.C. 2017) ....................................................................11

*Sierra Club v. Pruitt*,
  No. 3:15-cv-04328-JD (N.D. Cal.) ................................................................8, 18

*Sierra Club v. Ruckelshaus*,
  602 F. Supp. 892 (N.D. Cal 1984) ..................................................................12

*Sierra Club v. Thomas*,
  658 F. Supp. 165 (N.D. Cal. 1987) ...........................................................12, 14, 19

*State of Connecticut v. Pruitt*,
  No. 3:17-cv-00796-WWE, Ruling on Motions for Summary Judgment and
  Motion Concerning Remedy (D. Conn. Feb. 2, 2018), ECF No. 52 ................................12, 14

*State of New York v. Gorsuch*,
  554 F. Supp. 1060 (S.D.N.Y. 1983)............................................................ 11-12, 14

**FEDERAL STATUTES**

28 U.S.C.
  § 1331.................................................................................................9
  § 1361.................................................................................................9

42 U.S.C.
  §§ 7408-7409 ........................................................................................2
  § 7410(a)(1) ......................................................................................2-3
  § 7410(a)(2) ..........................................................................................2
  § 7410(a)(2)(D)(i)(I) ..........................................................................2, 3, 20
  § 7410(c)(1) ....................................................................................passim
  § 7410(k)(1) ..........................................................................................3
  § 7509 ................................................................................................2
  § 7604 ................................................................................................8
  § 7604(a) ............................................................................................10
  § 7604(a)(2) ......................................................................................9, 13
  § 7604(d) ............................................................................................20

**FEDERAL RULES AND REGULATIONS**

Code of Federal Regulations
  40 C.F.R. pt. 54.......................................................................................8

Federal Register

73 Fed. Reg. 16,436 (Mar. 27, 2008)................................................................3
78 Fed. Reg. 14,681 (Mar. 7, 2013)................................................................8
80 Fed. Reg. 12,264 (Mar. 6, 2015)................................................................5
80 Fed. Reg. 39,961 (Jul. 13, 2015)......................................................1, 4, 13
80 Fed. Reg. 65,292 (Oct. 26, 2015)...........................................................3, 4
81 Fed. Reg. 74,504 (Oct. 26, 2016)........................................................ passim

Federal Rules of Civil Procedure

Fed. R. Civ. P. 56(a) ....................................................................................10

<u>**POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION**</u>

**I.   ISSUE TO BE DECIDED**

This case concerns the undisputed failure of EPA to meet a statutory deadline to promulgate federal implementation plans (FIPs) that fully address the interstate transport of pollution from sources in Illinois, Michigan, Pennsylvania, Virginia and West Virginia (Upwind States) that contribute significantly to nonattainment in, or interfere with maintenance by, any other state with respect to the 2008 ozone national ambient air quality standards (NAAQS). EPA has admitted that it had a deadline of August 12, 2017 to issue FIPs for the Upwind States addressing their respective obligations under the Good Neighbor Provision of the Clean Air Act (Act), 42 U.S.C. § 7410(a)(2)(D)(i)(I). *See* Answer (Doc. No. 20), ¶ 24; *see also* Findings of Failure to Submit a Section 110 State Implement. Plan for Interstate Transport for 2008 Nat'l Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 39,961, 39,961 (Jul. 13, 2015) (effective Aug. 12, 2015); Joint Statement of Undisputed Material Facts (SUF), ¶ 7. In failing to meet this deadline, EPA has failed to comply with its mandatory duty under section 110(c)(1) of the Act. 42 U.S.C. § 7410(c)(1). EPA has not, to date, taken action fully resolving interstate transport obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for Illinois, Michigan, Pennsylvania, Virginia, and West Virginia. SUF, ¶ 8; Answer, ¶¶ 23, 27.

The Court has the power to order compliance with the Act according to an enforceable schedule. Given the adverse impacts to plaintiffs from EPA's continued delay in providing a full remedy for the interstate transport of air pollution from the Upwind States, the severe and widespread harm to plaintiffs' citizens and environment from ozone pollution, EPA's long history of delay in fully addressing interstate ozone transport, and the fact that EPA already has the information and resources necessary to act expeditiously to complete its mandatory duty, the Court should issue a binding and enforceable order requiring EPA to act in conformity with the proposed

1

schedule set forth by all parties in their Joint Statement of Undisputed Material Facts, which EPA has expressly agreed is a feasible schedule for it to meet. Specifically, EPA should be required to sign and disseminate by June 29, 2018 a notice of a proposed action fully addressing the obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for Illinois, Michigan, Pennsylvania, Virginia and West Virginia, and to promulgate by December 6, 2018 a final action fully addressing the obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for Illinois, Michigan, Pennsylvania, Virginia and West Virginia. SUF, ¶¶ 12-13. The Court should also retain jurisdiction to ensure EPA's compliance.

## II.   STATEMENT OF RELEVANT STATUTORY AND FACTUAL BACKGROUND

### A.  The Clean Air Act and NAAQS

Under the cooperative federalism framework of the Act, EPA and the states are required to work together to achieve healthy air quality throughout the country. The Act requires EPA to establish and periodically revise NAAQS, which establish maximum allowable ambient air concentrations for certain pollutants. 42 U.S.C. §§ 7408-7409.

The Act requires each state to submit a state implementation plan (SIP) for every promulgation or revision of a NAAQS, within three years of that standard's promulgation or revision, that provides for the "implementation, maintenance, and enforcement" of the standard. 42 U.S.C. § 7410(a)(1). These plans are often referred to as "Infrastructure" SIPs. A state that fails to develop a SIP that can demonstrate the likelihood of attainment with a NAAQS may be subject to sanctions under the Act, including requiring new or modified source emissions offsets at an increased 2 to 1 ratio and the loss of highway funding. 42 U.S.C. § 7509. An Infrastructure SIP must meet the requirements of 42 U.S.C. § 7410(a)(2), including the requirements of the Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I).

The Good Neighbor Provision requires states to prohibit sources within their state from emitting any air pollution in amounts that will "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any" NAAQS, or what EPA refers to as the "interstate transport" of air pollution. EPA has a mandatory duty to take final action on any SIP submittal by determining whether such submittal is complete "[w]ithin 60 days of the Administrator's receipt of a plan or plan revision, but no later than 6 months after the date, if any, by which a State is required to submit the plan or revision." 42 U.S.C. § 7410(k)(1). If a state fails to submit a SIP that satisfies its obligation under the Good Neighbor Provision, the Act requires EPA to fill a backstop role by issuing a FIP within two years of the finding of failure to submit that prohibits interstate transport of air pollution that will significantly contribute to nonattainment in, or interfere with maintenance by, any other state with respect to any NAAQS. *Id.* § 7410(c)(1). This two-year deadline establishes a mandatory duty under the Act and is the duty that EPA has failed to perform in this case.

**B. Factual Background**

EPA promulgated a revised NAAQS for ozone on March 12, 2008, *see* Nat'l Ambient Air Quality Standards for Ozone, 73 Fed. Reg. 16436 (Mar. 27, 2008) (effective May 27, 2008) (2008 ozone NAAQS), which triggered the states' duty under 42 U.S.C. § 7410(a)(1) to submit Infrastructure SIPs to EPA within three years providing for implementation and enforcement of the standard, including satisfying their Good Neighbor Provision obligations. Ozone is a gas that forms when other atmospheric pollutants, known as ozone precursors, such as nitrogen oxides (NOx) and volatile organic compounds (VOCs), react in the presence of sunlight. 81 Fed. Reg. at 74,513; *see also* Nat'l Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292, 65,299-300 (Oct. 26, 2015) (effective Dec. 28, 2015). EPA has found significant negative health effects

in individuals exposed to elevated levels of ozone. 80 Fed. Reg. at 65,302-11; 81 Fed. Reg. at 74,514.  SUF, ¶ 3.

Illinois, Michigan, Pennsylvania, Virginia and West Virginia are upwind states from New York that contribute significantly to violations of the ozone NAAQS in New York. 81 Fed. Reg. at 74,538; Declaration of Robert Sliwinski, P.E., sworn to on April 10, 2018 (Sliwinski Decl.), ¶¶ 35-36. Similarly Michigan, Pennsylvania, Virginia and West Virginia are upwind states from Connecticut that contribute significantly to violations of the ozone NAAQS in Connecticut. 81 Fed. Reg. at 74,538; Declaration of Richard A. Pirolli, sworn to on April 9, 2018 (Pirolli Decl.), ¶ 20. Due to the interrelated nature of ozone transport within the New York metropolitan area, the entire New Jersey-New York-Connecticut area in the vicinity of New York City was regionally designated as being in nonattainment with the 2008 ozone NAAQS, and the inability of one state to meet the 2008 ozone NAAQS affects the ability of the other states in the metropolitan area to attain the NAAQS. *See* Declaration of Sharon C. Davis, sworn to April 5, 2018 (Davis Decl.), ¶¶ 1, 11. The entire state of Connecticut is also in nonattainment. Pirolli Decl. ¶¶ 15-17, 20.

On July 13, 2015, EPA published notice in the *Federal Register* that 24 states, including the Upwind States, had failed to submit SIPs that satisfied their Good Neighbor Provision requirements under the Act for the 2008 ozone NAAQS.[1] *See* 80 Fed Reg. 39,961 (Jul. 13, 2015) (effective Aug. 12, 2015); SUF, ¶ 5. Under 42 U.S.C. § 7410(c)(1), EPA's finding of failure to submit triggered a deadline for it to promulgate a FIP for these states' Good Neighbor Provision

---

[1] Finding the 2008 ozone NAAQS insufficient to protect public health and welfare, EPA in 2015 promulgated another revised ozone NAAQS, setting a more stringent standard. 80 Fed. Reg. at 65,292 (2015 ozone NAAQS). Both of these standards remain in effect. EPA's and the states' obligations for implementing the 2015 ozone NAAQS do not supplant their obligations under the 2008 ozone NAAQS and are not at issue in this case. However, to the extent an area is not in attainment with the 2008 ozone NAAQS, it will certainly be even further out of attainment with the 2015 ozone NAAQS.

obligations within two years, by August 12, 2017. SUF, ¶ 7; *see EPA v. EME Homer City Generation, L.P.*, 134 S.Ct. 1584, 1600 (2014). To date, EPA has failed to promulgate fully compliant FIPs for the Upwind States. SUF, ¶ 8.

The New York City metropolitan area was reclassified to "moderate" nonattainment of the 2008 ozone NAAQS, effective on June 3, 2016. This reclassification required New York and Connecticut to submit a SIP demonstrating how they would attain the 2008 ozone NAAQS of 75 parts per billion (ppb) by the statutory deadline of July 20, 2018. Sliwinski Decl., ¶¶ 19-20; Pirolli Decl., ¶ 15. *See* Implementation of the 2008 Nat'l Ambient Air Quality Standards for Ozone: State Implementation Plan Requirements, 80 Fed. Reg. 12,264 (Mar. 6, 2015) (effective Apr. 6, 2015). New York submitted this SIP on November 10, 2017. It demonstrated that the area was meeting certain requirements, but that based on preliminary modeling, would not meet the July 20, 2018 deadline for a moderate nonattainment area, due in large part to interstate transport of emissions from upwind states. Sliwinski Decl., ¶¶ 21-23.

Connecticut has two nonattainment areas, Southwest Connecticut and Greater Connecticut. The Southwest Connecticut nonattainment area consists of Fairfield, New Haven, and Middlesex counties and, as discussed above, is part of the New York metropolitan nonattainment area, which was regionally designated as nonattainment for the 2008 ozone NAAQS. Pirolli Decl., ¶ 12. The remainder of the counties in Connecticut constitute the Greater Connecticut nonattainment ozone area. *Id.* Due in large part to transported pollution, Connecticut did not attain the 2008 NAAQS by the statutory deadline for marginal areas and was therefore reclassified to moderate nonattainment on June 3, 2016, with an attainment SIP due date of January 1, 2017. *Id.,* ¶ 15.

The moderate classification carried a statutory attainment deadline of July 20, 2018, based on air quality during the 2015 through 2017 ozone seasons, and required Connecticut to prepare

and submit an attainment SIP to EPA that includes a minimum of three-percent-per-annum reductions of VOC and NOx and an air quality modeling demonstration detailing how the area will come into compliance with the 2008 NAAQS, including by the adoption of additional costly emissions reductions. *Id.* However, preliminary monitoring data through 2017 indicates that Connecticut will not attain the 2008 ozone NAAQS by the July 20, 2018 statutory deadline for a moderate nonattainment area. *Id.*, ¶ 16. The 2017 preliminary design values indicate that eight of the twelve Connecticut monitors failed to achieve attainment by the 2017 deadline, with the worst-case monitor measuring 83 ppb, more than 10 percent above the 2008 NAAQS. *Id.*

On September 7, 2016, EPA finalized a regional rulemaking known as the Cross State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 Fed. Reg. 74,504 (Oct. 26, 2016) (effective Dec. 27, 2016) (CSAPR Update), to address interstate transport of ozone pollution with respect to the 2008 ozone NAAQS. The CSAPR Update promulgated partial FIPs for 22 eastern states, including the Upwind States. *Id.* at 74,521. However, EPA repeatedly expressly acknowledged that the FIPs for the Upwind States, among others, did not fully address EPA's outstanding obligation under the Act to prohibit interstate transport of air pollution that significantly contributes to nonattainment or interferes with maintenance of the NAAQS in downwind states, in violation of the Good Neighbor requirement. *Id.* at 74,506, 74,521-22; Answer, ¶ 27; *see* SUF, ¶ 8.

EPA further determined that emissions from sources in the Upwind States are expected to continue to exceed the threshold amount that EPA considers to significantly interfere with maintenance of the NAAQS at those downwind receptors. 81 Fed Reg. at 74,506, 74,521-22. EPA modeling and certified monitoring data have shown that the New York metropolitan area as well as other areas of Connecticut will fail to meet the attainment deadline of July 20, 2018 for a

moderate nonattainment area, due in large part to interstate transport of emissions from upwind states. Sliwinski Decl, ¶¶ 22-23, 36-37, 47; Pirolli Decl., ¶ 16. EPA modeling performed in January 2015 and most recently updated in August 2016 projected that two monitors in Connecticut would be in nonattainment in 2017, and another two would have maintenance issues in 2017. Pirolli Decl., ¶ 20. Preliminary data for 2017 indicate the actual ozone in 2017 was worse than predicted, with all four Connecticut monitors measuring nonattainment levels. *Id.*

Strikingly, 90 percent of ozone levels in Connecticut, and 95 percent of the monitored ozone at Connecticut's worst-case monitor, can be attributed to transported emissions originating from outside of Connecticut. Pirolli Decl., ¶¶ 11, 20. Similarly, downwind receptors located in Suffolk County, New York (Long Island) and Richmond County, New York (Staten Island) will continue to have problems attaining the 2008 ozone NAAQS in 2017. EPA's modeling for the CSAPR Update demonstrated that only 7 percent of the ozone in Richmond County (recorded at the Susan Wagner monitor) originated in New York State. Sliwinski Decl., ¶ 36. EPA's failure to fully address requirements under the Good Neighbor Provision for upwind states is a clear breach of EPA's statutory duty, and it harms the public health and welfare of the citizens of these downwind states. Sliwinski Decl.,¶¶ 38-43; Pirolli Decl., ¶¶ 22-23; Davis Decl., ¶¶ 14-17.

The Upwind States are not the only states for which EPA has missed the statutory FIP deadline to address Good Neighbor Provision obligations for the 2008 ozone NAAQS. EPA disapproved Kentucky's Good Neighbor SIP submission for the 2008 ozone NAAQS, *see* 78 Fed. Reg. 14,681 (Mar. 7, 2013) (effective April 8, 2013), and thus was required to promulgate a FIP for Kentucky—another state upwind to New York—within two years of that finding. New York subsequently intervened in an action to compel EPA's overdue Kentucky FIP, *Sierra Club v. Pruitt*, No. 3:15-cv-04328-JD (N.D. Cal.). In opposition to summary judgment, EPA submitted a

declaration from then-Acting Assistant Administrator of EPA, Janet G. McCabe (Sliwinski Decl. Ex. 2), describing the steps needed to develop the Kentucky FIP, including a "regional analysis" that would include the respective significant contributions to interstate ozone transport of the five Upwind States in this matter. *See* Sliwinski Decl. ¶ 53 & Ex. 2, ¶¶ 86-89.

EPA affirmatively stated that because it was facing deadlines to promulgate FIPs for numerous states for the 2008 ozone NAAQS, "conducting the necessary regional analysis to address Kentucky will also permit the Agency to address the outstanding FIP obligations for these . . . other states." *Id.* at ¶ 53 & Ex. 2, at ¶ 90. The court in *Sierra Club* granted summary judgment, ordering EPA to promulgate a Kentucky FIP fully addressing its Good Neighbor Provision obligations for the 2008 ozone NAAQS by June 30, 2018. *See Sierra Club v. Pruitt*, No. 3:15-cv-04328-JD, Order Re Partial Consent Decree and Summary Judgment (N.D. Cal. May 23, 2017) (Sliwinski Decl. Ex. 1). To date, EPA has taken no proposed or final action on the Kentucky FIP.

### C.  Procedural History of This Matter

As required by 42 U.S.C. § 7604 and 40 C.F.R. Part 54, New York sent a citizen suit notice letter by certified mail to EPA on October 26, 2017 stating New York's intention to file suit against EPA for failure to perform a non-discretionary duty under section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1). Declaration of Morgan A. Costello, sworn to April 9, 2018 (Costello Decl.), Ex. 1; SUF, ¶ 9. Connecticut sent its notice letter on November 13, 2017. Declaration of Jill Lacedonia, sworn to April 10, 2018 (Lacedonia Decl.), Ex. 1; SUF, ¶ 10. Following the expiration of the 60-day notice period, plaintiffs filed the Complaint on January 17, 2018. *See* Doc. No. 1; SUF, ¶ 11. On February 21, 2018, plaintiffs filed a letter-motion seeking a pre-motion conference in anticipation of this motion for summary judgment, *see* Doc. No. 12, and the parties appeared for conference with the Court on March 14, 2018. The Court subsequently ordered an agreed-upon briefing schedule by memorandum endorsement on March 27, 2018. *See* Doc. No. 19. EPA

answered the complaint on April 9, 2018, Doc. No. 20, admitting its failure to promulgate FIPs for the Upwind States by the statutory deadline. Answer, ¶¶ 24, 42. Due to EPA's policy directives precluding settlement of such suits, plaintiffs now proceed with this motion. However, the parties have reached agreement as to dates by which it is feasible for EPA to comply, as set forth in the Joint Statement of Undisputed Material Facts. SUF, ¶¶ 12-13.

## III.    JURISDICTION

Section 304(a)(2) of the Act authorizes the states, after giving notice, to commence a citizen suit against EPA where the Administrator has failed to perform a nondiscretionary duty under the Act. 42 U.S.C. § 7604(a)(2). When plaintiffs filed their Complaint, more than 60 days had passed since plaintiffs sent notice letters, but EPA had not, and still has not, performed its mandatory duty. SUF, ¶ 11. This Court has jurisdiction pursuant to 42 U.S.C. § 7604(a)(2) to compel EPA to discharge a nondiscretionary duty under the Act, as well as 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (action to compel officer or agency to perform a duty owed to plaintiffs).

Plaintiffs have standing to sue EPA concerning its failure to fulfill its mandatory duty under the Act to promulgate FIPs that fully address the Upwind States' Good Neighbor Provision obligations. EPA's failure to take timely action to fully satisfy its FIP obligation has caused plaintiffs to suffer past and continuing harm from the delay in addressing the transport of air pollution from sources in these Upwind States that significantly contributes to New York and/or Connecticut's ozone nonattainment. Plaintiffs have a procedural right to compel EPA to perform non-discretionary acts. 42 U.S.C. § 7604(a). EPA's failure to timely promulgate the FIPs impairs quasi-sovereign and/or proprietary interests held by plaintiffs.

For example, without timely action by EPA to fully address interstate ozone transport from the Upwind States, plaintiffs' citizens and environment will continue to be harmed by exposure to higher pollutant levels for a longer period of time, meaning more harmful impacts. Sliwinski Decl., ¶¶ 38-43, Pirolli Decl., ¶ 23. Because plaintiffs' requested relief would redress the harms to these interests caused by EPA's failure to issue FIPs for the Upwind States, plaintiffs have standing. *See Massachusetts v. EPA*, 549 U.S. 497, 518, 520-521 & n. 17 (2007) (states had standing under section 307(b) of the Act to challenge EPA denial of a rulemaking petition to regulate greenhouse gases from automobiles based on threatened injury to public health and property); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573, n. 7 (1992). Furthermore, EPA has not raised any challenge to plaintiffs' standing in its Answer, by motion to dismiss, or in the pre-motion conference with the court, and has entered into a Joint Statement of Undisputed Material Facts with the plaintiffs.

## IV.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F. 2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). However, if a nonmoving party has failed to make a sufficient showing on an essential

element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson*, 477 U.S. at 249.

When an agency has indisputably failed to meet a mandatory statutory deadline for rulemaking action, summary judgment is the appropriate mechanism to declare that failure and to determine when compliance is due. The Court has broad discretion to fashion an equitable remedy. *See Sierra Club v. Pruitt,* 280 F. Supp. 3d 1, 2-3 (D.D.C. 2017) (on summary judgment, ordering schedule for EPA to perform nondiscretionary act under the Act); *State of New York v. Gorsuch*, 554 F. Supp. 1060, 1065-66 (S.D.N.Y. 1983) (same); *see also Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994) (recognizing that "to bring about any progress toward achieving the congressional objectives of the [Clean Water Act], the EPA would have to be directed to take specific steps"). The court may set enforceable deadlines "both of an ultimate and an intermediate nature." *Natural Res. Def. Council v. Train*, 510 F.2d 692, 712 (D.C. Cir. 1974). Disagreement over the schedule does not create an issue of fact precluding summary judgment, and the Court's power to incorporate a timetable into its order for compliance may resolve competing declarations on the schedule. *See Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 55-59 (D.D.C. 2006) (resolving disagreement between parties' declarations in setting schedule for EPA's compliance with nondiscretionary duty under the Act); *see Sierra Club v. Ruckelshaus*, 602 F. Supp. 892, 898 n. 9 (N.D. Cal 1984) (rejecting EPA's argument that disagreement over schedule created a question of fact; disagreement affected only the court's equitable remedy); *see State of Connecticut v. Pruitt*, No. 3:17-cv-00796-WWE, Ruling on Motions for Summary Judgment and Motion Concerning

Remedy, at 6-7 (D. Conn. Feb. 2, 2018), ECF No. 52 (setting schedule for EPA's compliance with mandatory obligations under Section 126(b) of the Act).

Where the nondiscretionary deadline has passed, the agency may only avoid imposition of an "immediate deadline" where it establishes that it has used the "utmost diligence in discharging [its] statutory responsibilities." *Johnson*, 444 F. Supp. 2d at 52-53. The agency bears a heavy burden to demonstrate that a deadline in accordance with the timeline provided under the statute is impossible. *Gorsuch*, 554 F. Supp. at 1064. This burden is "especially heavy," where "the agency has failed to demonstrate any diligence whatever in discharging its statutory duty . . . and has in fact ignored that duty . . ." *Sierra Club v. Thomas*, 658 F. Supp. 165, 171-72 (N.D. Cal. 1987). Mere apprehension the agency cannot meet a deadline is insufficient. *Alabama Power Co. v. Costle*, 636 F.2d 323, 359 (D.C. Cir. 1979).

Here, the parties jointly propose that the Court order EPA to sign and disseminate notice of a proposed action fully satisfying its FIP obligations with respect to the Upwind States by June 29, 2018 and promulgate final action by December 6, 2018. SUF, ¶¶ 12-13. This schedule is both feasible and necessary. Therefore, the Court may properly exercise its equitable power to compel EPA to meets its obligations under the Act by incorporating this schedule for EPA's compliance into an order granting summary judgment to plaintiffs.

## V.    ARGUMENT

### A.   EPA FAILED TO PERFORM ITS MANDATORY DUTY TO ISSUE FIPS FOR ILLINOIS, MICHIGAN, PENNSYLVANIA, VIRGINIA AND WEST VIRGINIA BY THE STATUTORY DEADLINE.

Plaintiffs are entitled to summary judgment on their claim for a declaration that EPA failed to perform its mandatory duty under section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1), to promulgate FIPs that fully address the Upwind States' respective obligations under the Good Neighbor Provision of the Act for the 2008 ozone NAAQS. EPA does not dispute that the deadline

in section 110(c)(1) is non-discretionary. Answer ¶ 24; SUF ¶ 7. The Act specifically requires EPA to promulgate a FIP within two years after the Administrator finds a state has failed to make a required SIP submittal. 42 U.S.C. § 7410(c)(1). EPA issued its finding of failure to submit as to the Upwind States' SIPs on July 13, 2015, nearly three years ago, and EPA has admitted that it had a deadline of August 12, 2017 to issue FIPs for the Upwind States. SUF, ¶ 7; Answer, ¶ 24; 80 Fed. Reg. at 39,961 ("These findings of failure to submit establish a 2-year deadline for the EPA to promulgate a Federal Implementation Plan . . ."). Although EPA issued partial FIPs for the Upwind States as part of the final CSAPR Update on September 7, 2016, EPA repeatedly acknowledged therein that those FIPs were only a *partial* remedy for these states' Good Neighbor Provision obligations, and did not fully address EPA's obligation under the Act to prohibit interstate transport of pollution that contributes significantly to nonattainment in, or interferes with maintenance by, any other state with respect to the 2008 ozone NAAQS. *See, e.g.*, 81 Fed. Reg. at 74,506; *see* Answer, ¶ 27.

Therefore, there is no dispute that EPA is in violation of its deadline under section 110(c)(1) of the Act, which is "a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). The Court should grant plaintiffs declaratory relief. *See* Complaint (Doc. No. 1), ¶43 & Prayer for Relief, ¶ 1; s*ee Sierra Club v. Johnson*, 2006 WL 889801, at *1 (D.D.C. Mar. 31, 2006) (order granting plaintiff declaratory relief on motion for summary judgment based on EPA Administrator's admitted failure to perform a nondiscretionary duty under the Act), *reasoning explained* 444 F. Supp. 2d at 51-52; *see Gorsuch*, 554 F. Supp. at 1061 (noting that plaintiff had already obtained order from court declaring EPA Administrator had failed to perform nondiscretionary duty under the Act); *see also State of Connecticut v. Pruitt*, No. 3:17-cv-00796-WWE, Ruling on Motions for Summary

Judgment and Motion Concerning Remedy, at 7 (finding a missed deadline by EPA was a violation of mandatory duty under Section 126(b) of the Act and setting schedule for compliance).

### B. AN ORDER REQUIRING EPA TO EXPEDITIOUSLY PERFORM ITS MANDATORY DUTY TO PROMULGATE FIPS FOR ILLINOIS, MICHIGAN, PENNSYLVANIA, VIRGINIA AND WEST VIRGINIA IS FEASIBLE AND NECESSARY.

EPA is in violation of a mandatory statutory deadline, and therefore the court should exercise its equitable power to set enforceable deadlines to obtain "expeditious compliance." *Train*, 510 F.2d at 705; *see Johnson*, 444 F. Supp. 2d at 46 (ordering an expeditious schedule for rulemaking after EPA missed a nondiscretionary statutory deadline). The Court's discretion should be guided by Congress's express intent—a clear statutory mandate to promulgate FIPs within two years of EPA's finding that these states failed to submit fully compliant SIPs. *See Thomas*, 658 F. Supp. 172; *see Gorsuch*, 554 F. Supp. at 1065 (further study "must give ground in favor of expedition where Congress expressly directs the Administrator to establish standards promptly").

Furthermore, the presence of a significant public interest in this case makes it particularly necessary for the Court to exercise its discretion to achieve Congress's purposes. *See Train*, 510 F.2d at 713 (recognizing the court's power to "give or withhold its mandate in furtherance of the public interest, including specifically the interest in effectuating the congressional objective incorporated in regulatory legislation"); *see also Northwest Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680 (9th Cir. 2007) ("[w]here the public interest is involved, 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'") (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). Given the grave injury to plaintiffs from further delay, the Court may properly order EPA's expeditious compliance with the schedule detailed in the Joint Statement of Undisputed Material Facts. SUF, ¶¶ 12-13.

1. **Requiring EPA to meet the agreed upon schedule is urgently necessary because any further delay unfairly burdens New York and Connecticut and harms public health and welfare.**

EPA's failure to timely fulfill its statutory duty places unfair health, administrative, and economic burdens on New York and Connecticut and their citizens, in contravention of Congressional intent. The Upwind States remain in violation of the Good Neighbor Provision, and EPA has not acted, as required by statute, to fully remedy this violation. As the U.S. Supreme Court recognized in *EME Homer City Generation*, Congress included the Good Neighbor Provision to tackle the complex problem of air pollution emitted in one state that causes harm in another state:

> Left unregulated, the emitting or upwind State reaps the benefits of the economic activity causing the pollution without bearing all of the costs. . . . Conversely, downwind States to which the pollution travels are unable to achieve clean air because of the influx of out-of-state pollution they lack authority to control. *See* S. Rep. No. 101-228, p. 49 (1989).

134 S. Ct. at 1593.

EPA's illegal delay here has placed plaintiffs in precisely the position that Congress intended to prevent through the Good Neighbor Provision. In the absence of additional emission reductions from the Upwind States, plaintiffs must promulgate new, more stringent control measures for already well-controlled local sources of ozone precursors such as NOx and VOCs. Sliwinski Decl., ¶ 25, 36-40; Pirolli Decl., ¶ 22. As control measures become more stringent, they are more expensive. *Id.* The more expensive controls that plaintiffs must require for their in-state sources are a significant deterrent to new businesses locating in New York and Connecticut and a burden to existing businesses. *Id.* These expensive local emissions reductions will be required under the Act even though controls from the Upwind States, if implemented to eliminate their significant contribution, would cost far less per ton and would provide more relief from ozone in New York and/or Connecticut. *Id.* This result advances the economic inequity between plaintiffs

and the Upwind States, which have not imposed the necessary pollution controls to eliminate their downwind contributions. Although not a plaintiff in this suit, New Jersey has also already implemented aggressive control measures for its in-state businesses and faces similar burdens as plaintiffs from EPA's failure to remedy ozone transport affecting the entire New York City metropolitan area.  Davis Decl., ¶¶ 12-16.

Conversely, relying only on in-state control measures, it will be extremely difficult, if not impossible, for plaintiffs to plan for how they will attain, or in fact attain, the 2008 ozone NAAQS. New York was required to submit a SIP to EPA in 2017 demonstrating how it would attain and maintain the 2008 ozone NAAQS by the "moderate" nonattainment deadline of July 20, 2018. Sliwinski Decl., ¶¶ 20-21.  Due in large part to ozone transported from upwind states, New York's SIP is not expected to show attainment of the 2008 ozone NAAQS by this deadline, and therefore New York requested immediate reclassification to "serious" nonattainment, with a statutory attainment deadline of July 20, 2021. *Id.* at 22-24. Similarly, Connecticut is projected to not attain the 2008 ozone NAAQS by the July 20, 2018 deadline for a moderate nonattainment area and anticipates reclassification to serious nonattainment. Pirolli Decl., ¶¶ 15-17, 20.

Reclassification to a "serious" nonattainment area will result in increased burdens on the plaintiffs, which will in turn require additional air quality modeling to demonstrate attainment and adoption of any additional, necessary programs. Sliwinski Decl., ¶¶ 24-25; Pirolli Decl., ¶18. Moreover, with the July 20, 2021 deadline for attainment, unless EPA promulgates FIPs that provide for implementation of emission reduction measures that fully address interstate transport by the 2020 ozone season, plaintiffs will not be able to plan for attainment and maintenance of the 2008 ozone NAAQS. Because attainment by the 2021 deadline will be based in part on air quality monitoring for the 2018 ozone season, each day that EPA delays makes it more difficult for

16

plaintiffs to meet their deadline. Sliwinski Decl., ¶ 39; Pirolli Decl., ¶ 17. EPA must take account of attainment deadlines when setting compliance provisions to address interstate transport. *See North Carolina v. EPA*, 531 F.3d 896, 911-12*, amended in other part on reh'g,* 550 F.3d 1176 (D.C. Cir. 2008). As EPA recognized in the CSAPR Update, requiring downwind areas to plan for attainment and maintenance before requiring upwind reductions is contrary to the Act's statutory structure and "would place an inequitable burden on downwind areas by requiring them to plan for attainment and maintenance without any upwind actions." 81 Fed. Reg. at 74,516. Additional unnecessary delay in promulgating FIPs for the Upwind States will negatively impact plaintiffs' ability to attain the 2008 ozone NAAQS, in violation of the Act, settled court decisions and EPA's own policies stated in the CSAPR Update.

EPA's delay in fully addressing the Upwind States' requirements under the Good Neighbor Provision also harms public health and welfare. *See* Section III, *supra*. Plaintiffs have a sovereign duty and responsibility to protect the health and welfare of their citizens and the quality of their environment. The higher concentrations of ozone in the New York City metropolitan area and in Connecticut from transported ozone will cause a greater number of plaintiffs' citizens to be exposed to higher pollutant levels for a longer period of time, meaning more harmful health impacts to those citizens. Sliwinski Decl., ¶¶ 41-42; Pirolli Decl., ¶ 23. Both short-term and prolonged exposures to ambient ozone have been linked to a number of adverse health effects. *Id.*

Under all of these circumstances, the Court should exercise its equitable power to mandate that EPA act expeditiously to comply with its mandatory obligations under the Act.

**2. The parties' requested schedule for EPA to propose and finalize FIPs is feasible.**

EPA has acknowledged in the Joint Statement of Undisputed Material Facts that it is feasible for EPA to comply with the schedule for compliance proposed therein. SUF, ¶¶ 12-13; *see also* Sliwinski Decl., ¶¶ 48-59; Pirolli Decl., ¶ 24. In addition, since March 2017, EPA has

been under court order from the Northern District of California in *Sierra Club v. Pruitt*,[2] to promulgate a FIP for Kentucky, including performing a "regional analysis" that, according to EPA's representations to the court in that matter, "will also permit the Agency to address the outstanding FIP obligations for these . . . other states."  *See* Sliwinski Decl. Ex. B, at ¶ 90. Following completion of this regional analysis, the additional steps required to formulate a proposed action for these Upwind States should take approximately four weeks. Sliwinski Decl., ¶¶ 51-54, 57. To meet a June 30, 2018 final action deadline for the Kentucky FIP, EPA should have already completed this regional analysis, and therefore will be able to complete these additional steps for the Upwind States in time to comply with the jointly proposed schedule in this matter.

Because EPA's deadline for a nondiscretionary duty has passed, an "immediate deadline" is appropriate unless EPA can establish that it has both used the "'utmost diligence in discharging [its] statutory responsibilities,'" *Johnson*, 444 F. Supp. 2d at 52-53 (*citing Train*, 510 F.2d at 705), and that meeting an immediate deadline would be impossible. For example, in *Thomas*, the district court rejected EPA's request for additional time to complete regulations long past-due under the Act on the grounds that EPA had shown no diligence, nor demonstrated the impossibility of the proposed deadline. *Thomas*, 658 F. Supp. at 172. Similarly here, EPA cannot demonstrate diligence in discharging its duty because it missed the statutory deadline and has not taken action to fully address interstate transport even after the plaintiffs sent their notice letters in October and November 2017. SUF, ¶¶ 9-11.

---

[2] *See* Sliwinski Decl. Ex. A (Order Re Partial Consent Decree and Summary Judgment, *Sierra Club v. Pruitt*, No. 3:15-cv-04328-JD [N.D. Cal. May 23, 2017], ECF No. 73). The Court stated at oral argument in March 2017 that it would be ordering a June 30, 2018 deadline for compliance, which was memorialized in the Court's written order dated May 23, 2017.

Due to a court-ordered June 30, 2018 deadline to complete a substantially similar and interdependent regional analysis for Kentucky, EPA presumably has already completed most of the steps required to issue proposed FIPs for the Upwind States. *See Thomas*, 658 F. Supp. at 171-72. The tasks remaining for EPA to complete its analysis and propose FIPs with respect to the Upwind States are relatively straightforward and not time consuming, *see* Sliwinski Decl., ¶¶ 57-58; Pirolli Decl., ¶ 24. In light of plaintiffs' accompanying declarations that detail how achieving the proposed schedule is feasible, a "heavy burden" would fall on EPA to demonstrate the impossibility of this schedule. To the contrary, EPA has expressly and explicitly agreed that the proposed schedule set forth in the Joint Statement of Undisputed Facts is feasible for it to meet. SUF, ¶¶ 12-13. Therefore, the Court may properly order EPA's compliance with its statutory obligations in accordance with the proposed schedule.

## VI.    CONCLUSION

New York and Connecticut respectfully request that the Court grant summary judgment to them: (1) declaring that EPA is in violation of section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1), for failing to perform a mandatory duty to promulgate a federal implementation plan (FIP) for each of Illinois, Michigan, Pennsylvania, Virginia and West Virginia that fully addresses these states respective obligations under 42 U.S.C. § 7410(a)(2)(D)(i)(I), the "Good Neighbor Provision," with regard to the 2008 ozone national ambient air quality standards (NAAQS); (2) enjoining EPA to perform its mandatory duty to sign and disseminate by June 29, 2018 notice of a proposed action fully addressing the obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for Illinois, Michigan, Pennsylvania, Virginia and West Virginia, and to promulgate by December 6, 2018 a final action fully addressing the obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for Illinois, Michigan,

Pennsylvania, Virginia and West Virginia; (3) awarding plaintiffs the costs of litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 7604(d); (4) retaining jurisdiction over this matter for purposes of enforcing and effectuating the Court's order; and (5) granting any such further relief as the court deems just and proper.

Plaintiffs request oral argument if the Court believes it would be of assistance, but to the extent the Court finds that the issues are clear from the papers, plaintiffs waive their request for oral argument in the interest of expediting resolution.

Dated: April 10, 2018                                    Respectfully Submitted,

ERIC T. SCHNEIDERMAN
*Attorney General of New York*

By:       *S/Claiborne E. Walthall[3]*
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
*Assistant Attorney General*
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 776-2380
Claiborne.Walthall@ag.ny.gov

*For Plaintiff State of New York*


GEORGE JEPSEN
*Attorney General of Connecticut*

By:       S/*Jill Lacedonia*
JILL LACEDONIA
Assistant Attorney General
Office of the Attorney General
P.O. Box 120, 55 Elm Street
Hartford, CT 06141-0120
(860) 808-5250
Jill.Lacedonia@ct.gov

*For Plaintiff State of Connecticut*

---

[3] Counsel for New York represents that the other parties listed on this document consent to this filing.